## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Theodore J. van de Kamp and Patricia van de Kamp, | : Civil Action |
| | : |
| | : No. |
| Plaintiffs | : |
| | : |
| | : |
| vs. | : |
| | : |
| Transdermal Specialties, Inc., Bruce K. Redding, Jr., Bruce K. Redding, Jr. Intellectual Property Trust, and Transdermal Specialties Global, Inc. | : |
| | : |
| | : |
| | : |
| | : |
| Defendants | : |

## COMPLAINT

Plaintiffs Theodore J. van de Kamp and Patricia van de Kamp ("Plaintiffs"), by their undersigned counsel, bring this action pursuant to the law cited herein against Defendants Transdermal Specialties, Inc., Bruce K. Redding, Jr., Bruce K. Redding, Jr. Intellectual Property Trust, and Transdermal Specialties Global, Inc. ("Defendants").

### Introduction

1.     This action is brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Pennsylvania's Minimum Wage Act, 43 P.S. § § 333.101 *et seq.* ("PMWA"), and the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL").

### Jurisdiction and Venue

2.     This Court has original jurisdiction to hear this action and adjudicate the claims herein pursuant to 28 U.S.C. §§ 1331, 1343. The supplemental jurisdiction of this Court is invoked with regard to Plaintiffs' state law claims.

3.      Venue is appropriate in the Eastern District of Pennsylvania because the events or omissions giving rise to Plaintiffs' claims occurred therein and because Defendants are doing business and/or may be served with process therein.

## The Parties

### Plaintiffs

4.      Theodore J. van de Kamp ("Mr. van de Kamp") is an adult individual and is a citizen and resident of the United States. Mr. van de Kamp resides in Norwalk, Connecticut.

5.      Patricia van de Kamp ("Mrs. van de Kamp") is an adult individual and is a citizen and resident of the United States. Mrs. van de Kamp resides in Norwalk, Connecticut.

### Defendants

6.      Defendant Transdermal Specialties, Inc. ("TSI") is a Delaware corporation with its principal place of business at 581 Abbott Drive, Broomall, PA 19008.

7.      TSI is an employer pursuant to the FLSA because it generates over $500,000.00 in gross revenue annually or because it engages in interstate commerce.

8.      TSI is an employer within the meaning of the PMWA and the WPCL.

9.      According to TSI's website, TSI "is a pioneer in Ultrasonic active patch delivery systems for the drug and cosmetic industries. [TSI] has developed a patented delivery system that breaks new ground in active patch technology. This system generates ultrasonic transmissions of variable intensity and frequency on a programmed schedule that dilates the skin pores to allow easy acceptance of drugs into the bloodstream (the U-Strip) and topical cosmetics just underneath the skin (the U-Wand)."

10.     TSI's two products are the U-Strip and the U-Wand.

11.     According to TSI's website, "[t]he U-Strip is the first totally non-invasive, painless, programmable and easy to use method to deliver large molecule drugs into the

2

bloodstream while enhancing reliability and efficacy and minimizing negative side effects." See http://www.transdermalspecialties.com/home.html (accessed April 8, 2016).

12.     According to TSI's website, "[t]he U-Wand is the first dermatological device that dilates the skin's pores to allow easy acceptance of skincare products beneath the skin and directly into the pores for enhanced efficacy." See http://www.transdermalspecialties.com/home.html (accessed April 8, 2016).

13.     Defendant Bruce K. Redding, Jr. ("Redding") resides at 1 Kathryn Lane, Broomall, PA 19008. Redding is President and CEO of TSI.

14.     At all relevant times, Redding acted as an agent of and on behalf of TSI.

15.     Redding is an employer pursuant to the FLSA because he exercises significant control over TSI's operations, he exercised supervisory authority over Plaintiffs, and he was responsible in whole or part for the alleged violations set forth herein. See Exhibit "A".

16.     Redding is an employer within the meaning of the PMWA and the WPCL because he is policy decision maker for TSI in all areas of business, including but not limited to, compensation of employees.

17.     Defendant Bruce K. Redding, Jr. Intellectual Property Trust ("Redding IP Trust") is a trust, which Redding created to own all of TSI's intellectual property, including the U-Strip and the U-Wand patents. Redding IP Trust's principal place of business is 1 Kathryn Lane, Broomall, PA 19008.

18.     Redding IP Trust is an employer pursuant to the FLSA because it generates over $500,000.00 in gross revenue annually or because it engages in interstate commerce.

19.     Redding IP Trust is an employer within the meaning of the PMWA and the WPCL.

20.     Redding IP Trust is a joint employer of Plaintiffs.

3

21.     Redding IP Trust is a successor employer of Plaintiffs because:

    (a)     Redding IP Trust will continue the operations of TSI in order to commercialize the U-Strip for the treatment of diabetes;

    (b)     Redding IP Trust has notice of TSI's obligations to Plaintiffs; and

    (c)     Redding IP Trust has the ability to provide adequate relief directly to Plaintiffs

22.     Redding IP Trust owns all of TSI's intellectual property, which it licenses to TSI.

23.     According to TSI's shareholder report dated February 24, 2016, "[a]ll patents are licensed from Bruce Redding IP Trust to TSI exclusively but can revert if the company files bankruptcy."

24.     Upon information and belief, Redding formed Bruce Redding IP Trust to circumvent Redding and TSI's FLSA, PWA, and WPCL obligations to Plaintiffs.

25.     Defendant Transdermal Specialties Global, Inc. ("TSGI") is a Delaware corporation with its principal place of business at 581 Abbott Drive, Broomall, PA 19008.

26.     TSGI is an employer pursuant to the FLSA because it generates over $500,000.00 in gross revenue annually or because it engages in interstate commerce.

27.     TSGI is an employer within the meaning of the PMWA and the WPCL.

28.     TSGI is a joint employer

29.     TSGI is a successor employer of Plaintiffs because:

    (a)     TSGI will continue the operations of TSI in order to commercialize the U-Strip for the treatment of diabetes;

    (b)     TSGI has notice of TSI's obligations to Plaintiffs; and

    (c)     TSGI has the ability to provide adequate relief directly to Plaintiffs

30. Redding formed TSGI in March 2016 to receive a $13 million dollar investment from a South Korean investment consortium.

31. Although the South Korean investment consortium approached TSI, Redding chose to form a new entity – TSGI – to receive the investment.

32. Redding is a 60% owner of TSI and is a 23.5% owner of TSGI. TSI owns 25.5% of TSGI.

33. Redding is CEO of both TSI and TSGI. TSI and TSGI also share the same CFO, Christian Limbert.

34. TSI management will also serve as initial co-founders and management for TSGI.

35. Two members of TSI's Board of Directors will join the Board of Directors of TSGI.

36. Redding will continue his royalty stream from TSI and, in addition, receive a new royalty from the new TSGI operation.

37. TSGI's purpose is to commercialize the U-Strip for the treatment of diabetes.

38. TSI will relinquish its license on two patents owned by Redding, who will license them instead to TSGI.

39. Upon information and belief, Redding formed Redding IP Trust and TSGI to circumvent Redding and TSI's FLSA, PWA, and WPCL obligations to Plaintiffs.

## Factual Background

### Facts Related to Mr. van de Kamp's Claims

40. In 2008, TSI hired Mr. van de Kamp as its Vice President of Business Development and Consumer Products. TSI agreed to compensate Mr. van de Kamp with an annual salary of approximately $90,000.00.

41.     At all relevant times, Mr. van de Kamp worked out of an office in Norwalk, Connecticut.

42.     In April 2010, TSI promoted Mr. van de Kamp to Executive Vice President of Sales and Marketing.

43.     TSI orally contracted with Mr. van de Kamp to pay him a base annual salary as Executive Vice President of Sales and Marketing of $90,000.00 payable in equal bi-weekly installments.

44.     As Executive Vice President of Sales and Marketing, Mr. van de Kamp worked approximately 50-60 hours per week.

45.     As Executive Vice President of Sales and Marketing, Mr. van de Kamp's job duties included business planning, competitive product analysis, consumer clinical trial analysis, distribution strategy, market research (consumer and drug), marketing planning (cosmetic, dermatological, spa and drug markets), media analysis, media buys, field sales reports (spa market), store checks, managing advertising agency, manufacturing liaison, new business development and management, preparation of investor executive summaries (short forms), preparation of investor presentations, preparation of press releases, preparation of private placement memorandums, pricing strategy (cosmetic and drug markets), sales projections (cosmetic and drug markets), manufacturing, shipping, and warehousing logistics (cosmetic market), raising investor funding; and technology reviews.

46.     TSI did not pay any wages to Mr. van de Kamp in 2012.

47.     According to Mr. van de Kamp's W-2 for 2013, TSI paid Mr. van de Kamp just $10,384.62 in wages.

48.     On March 24, 2014, TSI entered into a written Employee Employment Agreement with Mr. van de Kamp. A true and correct copy of the March 24, 2014 Agreement is attached hereto as Exhibit "B".

49.     The initial term of the March 24, 2014 Agreement was for one year. The March 24, 2014 Agreement automatically renewed for one-year periods until termination of the March 24, 2014 Agreement. See Exhibit "B" at ¶ 2.1.

50.     TSI also agreed to adopt an incentive plan, of which Mr. van de Kamp would be a participant. See Exhibit "B" at ¶ 2.5.

51.     Pursuant to the March 24, 2014 Agreement, TSI agreed to pay Mr. van de Kamp a base salary of $95,000.00 in 2014, payable in equal bi-weekly installments. TSI also agreed to pay Mr. van de Kamp's health insurance. See Exhibit "B" at ¶ 2.4.

52.     According to Mr. van de Kamp's W-2 for 2014, TSI paid Mr. van de Kamp just $4,800.00 in wages.

53.     Pursuant to the March 24, 2014 Agreement, TSI agreed to pay Mr. van de Kamp a base salary of $120,000.00 in 2015, payable in equal bi-weekly installments. See Exhibit "B" at ¶ 2.4.

54.     According to Mr. van de Kamp's W-2 for 2015, TSI paid Mr. van de Kamp just $7,200.00 in wages.

55.     By letter dated September 11, 2015, Redding terminated Mr. van de Kamp's employment with TSI.

**Facts Related to Mrs. van de Kamp's Claims**

56.     In 2008, TSI hired Mrs. van de Kamp as its Vice President of Product Development.

57.    At all relevant times, Mrs. van de Kamp worked out of an office in Norwalk, Connecticut.

58.    TSI orally contracted with Mrs. van de Kamp to pay her at a rate of $75.00 per hour.

59.    From July 9, 2008 until September 7, 2015, Mrs. van de Kamp worked approximately 164 hours as TSI's Vice President of Product Development.

60.    From July 2008 through September 2015, TSI never paid Mrs. van de Kamp for work performed as an employee of TSI.

61.    Mrs. van de Kamp calculates that TSI owes her $14,025.00 in unpaid wages.

62.    Mrs. van de Kamp has not worked for TSI since TSI terminated Mr. van de Kamp's employment.

**Count I**
**FLSA – Failure to Pay Minimum Wage**
**All Plaintiffs vs. All Defendants**

63.    Paragraphs 1 through 62 are incorporated herein by reference as if set forth at length.

64.    As averred above, TSI is an employer within the meaning of the FLSA.

65.    As averred above, Redding is an employer within the meaning of the FLSA.

66.    As averred above, Redding IP Trust is an employer within the meaning of the FLSA.

67.    As averred above, TSGI is an employer within the meaning of the FLSA.

68.    At all relevant times, Plaintiffs were employees of Defendants.

69.    In 2013, Connecticut's minimum wage was $8.25 per hour.

70.    As averred above, in 2013, Mr. van de Kamp worked 50-60 hours per week, which is 2,600-3,120 hours per year.

71.     As averred above, in 2013, TSI paid Mr. van de Kamp $10,384.62 in wages.

72.     Accordingly, in 2013, TSI paid Mr. van de Kamp minimum wage for approximately 1,258 hours of work. TSI failed to pay Mr. van de Kamp minimum wage for 1,342-1,862 hours of work.

73.     In 2014, Connecticut's minimum wage was $8.70 per hour.

74.     As averred above, in 2014, Mr. van de Kamp worked 50-60 hours per week, which is 2,600-3,120 hours per year.

75.     As averred above, in 2014, TSI paid Mr. van de Kamp $4,800.00 in wages.

76.     Accordingly, in 2014, TSI paid Mr. van de Kamp minimum wage for approximately 551 hours of work. TSI failed to pay Mr. van de Kamp minimum wage for 2,049-2,569 hours of work.

77.     In 2015, Connecticut's minimum wage was $9.00 per hour.

78.     As averred above, in 2015, Mr. van de Kamp worked 50-60 hours per week, which is 1,800-2,160 hours through September 11, 2015.

79.     As averred above, in 2015, TSI paid Mr. van de Kamp $7,200.00 in wages.

80.     Accordingly, in 2015, TSI paid Mr. van de Kamp minimum wage for approximately 800 hours of work. TSI failed to pay Mr. van de Kamp minimum wage for 1,000-1,360 hours of work.

81.     As averred above, from July 9, 2008 until September 7, 2015, Mrs. van de Kamp worked approximately 164 hours for TSI, but TSI failed to pay any wages to Mrs. van de Kamp.

82.     Defendants' actions constitute willful violations of the FLSA.

83.     From 2013 until September 15, 2015, TSI employed approximately ten individuals.

84. From 2013 until September 15, 2015, TSI made improper deductions to Plaintiffs' wages. Further, on occasions that TSI paid wages, TSI did not remit payroll taxes to appropriate government authorities. See Exhibit "A".

85. From 2013 until September 15, 2015, TSI improperly reduced the salaries of approximately ten employees.

86. Redding was responsible for taking the improper salary deductions.

87. Defendants do not have a clearly communicated policy that permits or prohibits improper deductions.

88. Since Defendants have an actual practice of making improper deductions from its employees' pay, the salary basis rule cannot be met during the time period in which improper deductions were made. Therefore, Plaintiffs were not paid on a salary basis as required for exemption during the relevant time period.

89. Pursuant to the FLSA, Plaintiffs are entitled to compensation going back three years from the date of this Complaint.

90. Plaintiffs seek all remedies permitted under the FLSA, including unpaid wages, interest, liquidated damages, and attorney's fees and costs.

### Count II
### FLSA – Failure to Pay Overtime Compensation
### Mr. van de Kamp vs. All Defendants

91. Paragraphs 1 through 90 are incorporated herein by reference as if set forth at length.

92. From 2013 through September 11, 2015, Mr. van de Kamp worked more than 40 hours each week for TSI, but was not compensated at a rate of time and one half of his hourly wage.

93.     From 2013 through September 11, 2015, Mr. van de Kamp estimates that he worked 10-20 hours of overtime per week.

94.     Defendants' actions constitute willful violations of the FLSA.

95.     Since Defendants have an actual practice of making improper deductions from its employees' pay, the salary basis rule cannot be met during the time period in which improper deductions were made. Therefore, Plaintiffs were not paid on a salary basis as required for exemption during the relevant time period.

96.     Pursuant to the FLSA, Mr. van de Kamp is entitled to overtime compensation going back three years from the date of this Complaint.

97.     Mr. van de Kamp seeks all remedies permitted under the FLSA, including unpaid overtime, interest, liquidated damages, and attorney's fees and costs.

**Count III**
**PMWA – Failure to Pay Minimum Wage**
**All Plaintiffs vs. All Defendants**

98.     Paragraphs 1 through 97 are incorporated herein by reference as if set forth at length.

99.     As averred above, from 2013 through September 11, 2015, Defendants failed to pay minimum wage to Plaintiffs.

100.    Defendants' failure to pay Plaintiffs constitutes a violation of the PMWA because Defendants did not pay Plaintiffs minimum wage.

101.    Pursuant to the PMWA, Plaintiffs are entitled to compensation going back three years from the date of this Complaint.

102.    Plaintiffs seek all remedies permitted under the PMWA, including unpaid wages, interest, liquidated damages, and attorney's fees and costs.

## Count IV
### PMWA – Failure to Pay Overtime Compensation
#### Mr. van de Kamp vs. All Defendants

103.    Paragraphs 1 through 102 are incorporated herein by reference as if set forth at length.

104.    As averred above, Defendants failed to pay overtime to Mr. van de Kamp from 2013 through September 11, 2015.

105.    Defendants' failure to pay overtime also constitutes a violation of the PMWA.

106.    Pursuant to the PMWA, Mr. van de Kamp is entitled to overtime compensation going back three years from the date of this Complaint.

107.    Mr. van de Kamp seek all remedies permitted under the PMWA, including unpaid overtime, interest, liquidated damages, and attorney's fees and costs.

## Count V
### Pennsylvania Wage Payment and Collection Law
#### All Plaintiffs vs. All Defendants

108.    Plaintiffs incorporate by reference Paragraphs 1 through 107 as if fully stated herein.

109.    As averred above, Plaintiffs were employees of TSI.

110.    As averred above, Defendants are employers under the WPCL.

111.    As averred above, Redding is a policy decision maker for TSI in all areas of business, including but not limited to, compensation of employees.

112.    Because of his policy-making role, Redding is also an employer under Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.2(a) ("WPCL").

113.    As averred above, from 2013 through September 11, 2015, Defendants failed to pay the agreed-upon salary to Mr. van de Kamp.

114. As averred above, from 2013 through September 11, 2015, Defendants failed to pay the agreed-upon hourly wage to Mrs. van de Kamp.

115. Redding made the decision to not pay Plaintiffs.

116. Plaintiffs did not authorize Defendants to withhold wages.

117. Defendants, upon information and belief, never sought or obtained the Pennsylvania Department of Labor and Industry's approval for the pay deductions.

118. Defendants took unauthorized wage deductions for their convenience and not for the convenience of Plaintiffs.

119. The WPCL requires employers to pay covered employees for every hour worked in a workweek and that they pay wages on regular paydays. 43 P.S. § 260.3.

120. The WPCL prohibits pay deductions except for those explicitly permitted by law or regulation, none of which apply to this lawsuit. 43 P.S. § 260.3, 32 Pa. Code § 9.1.

121. Payment of the unpaid wages is more than 60-days overdue.

122. Defendants do not have a good faith basis to defend, assert a counterclaim or set off against the wages due and owing to Plaintiffs.

123. Defendants violated the WPCL by making unauthorized deductions from Plaintiffs' pay.

124. In addition to the wages owed, Plaintiffs are entitled to liquidated damages in the amount of 25% of the wages owed or $500.00, whichever is greater. 43 P.S. § 260.10.

125. Plaintiffs are also entitled to attorneys' fees and costs. 43 P.S. § 260.90a(f).

126. Under Pennsylvania's Wage Payment and Collection Law, Defendants are statutory employers for these purposes and as such, are jointly and separately liable for all wages owed to Plaintiff, for liquidated damages, and for Plaintiff's attorneys' fees and costs.

## Count VI
## Breach of Contract
## <u>All Plaintiffs vs. All Defendants</u>

127.  Plaintiffs incorporate by reference Paragraphs 1 through 126 as if fully stated herein.

128.  As averred above, Mr. van de Kamp entered into an oral employment contract followed by a written employment contract with TSI.

129.  Mr. van de Kamp complied with the terms of the contract entered into with TSI.

130.  As averred above, TSI failed to perform according to the contract.

131.  As a result of TSI's breach of contract, Mr. van de Kamp has suffered damages.

132.  As averred above, Mrs. van de Kamp entered into an oral employment contract with TSI.

133.  Mrs. van de Kamp complied with the terms of the contract entered into with TSI.

134.  As averred above, TSI failed to perform according to the contract.

135.  As a result of TSI's breach of contract, Mrs. van de Kamp has suffered damages.

## Count VII
## Unjust Enrichment
## <u>All Plaintiffs vs. All Defendants</u>

136.  Plaintiffs incorporate by reference Paragraphs 1 through 135 as if fully stated herein.

137.  As averred above, from 2012 through September 11, 2015, Mr. van de Kamp worked for TSI.

138.  TSI benefited from Mr. van de Kamp's work.

139.  As averred above, TSI refuses to pay Mr. van de Kamp his salary for the majority of the time period from 2012 through September 11, 2015.

14

140. As averred above, from July 9, 2008 until September 7, 2015, Mrs. van de Kamp worked for TSI.

141. Defendants have benefited from Mrs. van de Kamp's work.

142. As averred above, TSI refuses to pay Mrs. van de Kamp for any of the work she performed while employed with TSI.

143. By not paying Plaintiffs, all Defendants have been unjustly enriched.

## RELIEF

**WHEREFORE**, Plaintiffs respectfully requests this Court to:

(a) Issue a Declaratory Judgment declaring that Defendants' actions, as set forth in this Complaint, violated Plaintiffs' rights under the FLSA, the PMWA, and the WPCL.

(b) Enjoin and restrain Defendants acting on behalf of, or in concert with, Defendants from engaging in such unlawful practices.

(c) Enter judgment in favor of Plaintiffs, and against Defendants, for all unpaid wages, unpaid overtime, liquidated damages, interest, and penalties, as allowable under the FLSA, the PMWA, and the WPCL.

(d) Enter judgment in favor of Plaintiffs for all unpaid wages that Defendants agreed to pay Plaintiffs.

(e) Award Plaintiffs reasonable attorneys' fees together with the costs of this action.

(f) Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Plaintiffs' rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

## JURY DEMAND

Plaintiffs hereby demand a jury to try all claims triable by jury.

Dated: June 6, 2016

/s/ Claude I. Schoenberg
Claude I. Schoenberg (PA ID No. 56222)
Kay Sickles (PA ID No. 75159)
Schoenberg Law Office
363 Bala Ave.
Bala Cynwyd, PA 19004
(610) 949-9400; (610) 949-9484 fax


Stephanie J. Mensing (PA ID No. 89625)
Mensing Law LLC
The Philadelphia Building
1315 Walnut Street – Suite 917
Philadelphia, PA 19107
(215) 586-3751; (215) 359-2741 fax

Attorneys for Plaintiffs

# Exhibit "A"

-----Original Message-----
From: Christian Limbert [mailto:christian.limbert@gmail.com]
Sent: Friday, January 29, 2016 10:01 AM
To: 'Yochi'
Subject: Transdermal Specialties, Inc. - Treatment of Employees, as
Employees, as Required by the internal Revenue Code.

January 29, 2016

Dear Yochi:

Sorry, but you were an "Employee," as defined by Federal Law, since
the Inception of your Employment at Transdermal Specialties, Inc., and that
is how I treated you in the statutory payroll reporting for 2015.

Employees were improperly treated as Consultants in past years (2014
and prior) that we will correct when we complete the accounting in about two
months.  Quite a few people will not be happy in the end, as some will
likely be required to file amended tax returns for prior years (2014 and
prior); however we all are required to abide by the law and pay taxes that
are due.

No one that was ever treated improperly as Consultants by Bruce
Redding and the Company (including any work performed by Don Haberle) were
properly and formally reported to the IRS and the Commonwealth
of Pennsylvania.  Thus, I believe, many must have thought they were getting tax
free income (frankly, this is not the real world).   Underreporting of
income that is material enough is considered a felony.

We have serious catch-up to do, including the reporting of grants of common stock as income to the IRS and the State of Pennsylvania, taxable transactions for both Federal and State income tax reporting, including the payment of FICA taxes.

One cannot choose on his/her own to be treated as a Consultant, the Treatment of Employees, as "Employees, as defined by the IRS," is specifically part of the U. S. Internal Revenue Code.   If you would like to review the 20 point Internal Revenue Service Guide for Defining Employees (as compared to Defining Consultants), I am happy to dig it out and send it to you.

Rest assured, that going forward, Transdermal Specialties, Inc. will fully abide by the law.

Sorry for the bad news.

        Thank you.

Yours sincerely,

Chris Limbert

66 Dann Farm Road
Pound Ridge, New York   10576-2110

Home:    914.764.9419
Mobile:  914.330.1610
Work:    484.479.3240

Christian.limbert@gmail.com

www.LinkedIn.com/in/ChrisLimbert


-----Original Message-----
From: Yochi [mailto:yochi@dulitzki.com]
Sent: Friday, January 29, 2016 8:49 AM
To: <christian.limbert@gmail.com> <christian.limbert@gmail.com>
Subject: Wrong W-2

Hi Chris,
I hope all is well.  I wanted to get a hold of you and let you know that my W-2 is completely wrong.  I cannot use it as the salary is doubled of what I made once I became an employee as of April 1st.
From January through end of March I was a contractor and I filed quarterly taxes and paid them.  The W-2 should only reflect 8 pays of about $2750 that was net pay (supposedly Bruce deducted taxes).
We need to fix this ASAP since I have an appointment with my accountant soon.

Best regards,
Yochi

# Exhibit "B"

EMPLOYEE EMPLOYMENT AGREEMENT

BETWEEN

TRANSDERMAL SPECIALTIES INC.,

AND

**Theodore J. van de Kamp**
Executive Vice President
Sales & Marketing
Tvandekamp@transdermalspecialties.com
100 Seaview Avenue, Suite 4B
Norwalk, CT 06855
www.transdermalspecialties.com
Tel:      (203) 857-4887
Cell:     (203) 984-1813
Fax: (203)-866-1337

# EMPLOYEE EMPLOYMENT AGREEMENT

**THIS EMPLOYEE EMPLOYMENT AGREEMENT** ("Agreement") dated as of March 24, 2014 is by and between **TRANSDERMAL SPECIALTIES INC.**, a Delaware corporation ("TSI"), and **Theodore J. van de Kamp**, ("Employee").

**WHEREAS**, TSI and Employee desire to enter into an Agreement to provide for Employee's employment by TSI, upon the terms and conditions set forth herein.

**NOW, THEREFORE, INTENDING TO BE LEGALLY BOUND,** and in consideration of the provisions herein contained, the legal sufficiency of which is hereby acknowledged by each of the parties to this Agreement, TSI and Employee agree as follows:

1.      **Prior Agreements**.

This Agreement supersedes and replaces any and all prior employment Agreements between TSI and Employee.

2.      TSI employs Employee, and Employee accepts such employment and agrees to perform his duties and responsibilities hereunder, in accordance with the terms and conditions hereinafter set forth.

2.1      **Employment Term**

a)      The initial term of this Agreement shall commence as of the signing of this Agreement, and shall continue for one (1) year or until the employment relationship established pursuant to this Agreement is terminated by TSI, by Employee or otherwise pursuant to the provisions of this Agreement or is extended in accordance with the provisions of Section 2.1(b) hereof. This Agreement may be extended by mutual consent.

b)      Following the initial period of time referred to in Section 2.1(a) hereof, the Employment Term shall automatically be extended and continue on a year to year basis thereafter, subject to the termination and other provisions contained in this Agreement, unless either party to this Agreement shall notify the other party in writing at least thirty (30) days prior to the end of the then-current term that the employment relationship is not to be extended.

c)      The initial term referred to in Section 2.1(a) of this Agreement and the year-to-year terms referred to in Section 2.1. (b) of this Agreement are hereinafter respectively referred to as "Employment Term".

## 2.2    Duties and Responsibilities

a)    During the Employment Term, Employee shall perform such duties as are reasonably related to the enhancement of the long term profitability of TSI and such other duties as may be reasonably assigned to him by TSI's CEO or by the senior management of the company.

b)    During the Employment Term, Employee shall not, nor shall he cause or permit any other employee, agent or representative of TSI who reports to him to, do any of the acts set forth on Exhibit "A" which is attached hereto and incorporated herein by reference, without the express prior written consent of the CEO.

c)    During the Employment Term, Employee shall conduct himself/herself with high ethical and professional standards, (ii) policies and procedures of which TSI shall from time to time adopt or promulgate, and (iii) applicable laws.

d)    Employee represents to TSI that he is not currently subject to, and shall not hereafter become subject to, any employment Agreement, non-competition Agreement, non-disclosure Agreement or this Agreement, covenant, understanding or restriction which would prohibit Employee from fully observing and performing his duties and responsibilities hereunder, or which would otherwise in any manner, directly or indirectly, limit or affect the duties and responsibilities which may now or in the future be assigned to Employee by TSI.

## 2.3    Extent of Service

During the Employment Term, Employee shall use his best efforts to carry out his duties and responsibilities under Section 2.2 hereof and, consistent with the other provisions of this Agreement, to devote sufficient working time, attention and energy thereto so as to assure the full and adequate performance of his duties and responsibilities hereunder to TSI and shall not accept any other employment, engagement, responsibility or obligation which would interfere with his duties and responsibilities to TSI hereunder.  Except as provided in Section 4 hereof, the foregoing shall not be construed as preventing Employee from making investments in other businesses or enterprises, provided that Employee shall not become engaged in any other business, charitable or community activity which may materially interfere with his ability to discharge his duties and responsibilities to TSI.

## 2.4    Base Salary/Benefits.

a)    For all the services rendered by Employee hereunder TSI shall pay Employee annual compensation in each year of his employment accordance with Exhibit "B" which is attached hereto and incorporated herein by reference ("Base Salary"), payable in EQUAL BI-WEEKLY installments.  TSI shall be entitled to make proper withholdings from Employee's Base Salary as required by law or agreed to by Employee.  The base salary of employee may be increased from time to time by action of the board.

b)    During the Employment Term, Employee shall also be (i) entitled to participate in such retirement, profit sharing, group insurance, medical and other fringe benefit plans, which may be authorized by the Board. and (ii) entitled to vacation and holidays in accordance with TSI's normal personnel policies for its employees generally.  Employee shall receive health insurance, with coverage extended to a family plan, 100% paid by TSI during the term of this Agreement, with the option to maintain the existing TSI Group health plan or to convert to another plan as may be adopted by TSI.

### 2.5     Incentive Compensation.

TSI and Employee acknowledge that a performance based incentive plan ("Incentive Plan") is consistent with the goals of TSI and Employee. TSI covenants to Employee that upon selection of the CEO, the Board shall instruct the CEO to develop and recommend to the Board a performance based incentive plan, the participants of which shall include Employee. TSI acknowledges that it is its intention to adopt an appropriate Incentive Plan as promptly as reasonably possible. The Employee shall not be eligible for such an Incentive or benefits plan immediately upon signing the employment agreement.

### 2.6     Expenses.

TSI shall reimburse Employee on a timely basis for all ordinary and necessary out-of-pocket business expenses incurred in connection with the discharge of his duties and responsibilities hereunder during the Employment Term in accordance with TSI's expense approval procedures then in effect and upon presentation to TSI of an itemized account and written proof of such expenses

### 3.     Confidential Information.

a)     Employee recognizes and acknowledges that by reason of his employment by and service to TSI, he has had and shall continue to have access to financial, proprietary and other confidential information of TSI and its affiliates, including information and knowledge pertaining to technology, technological developments, patents, patent applications, products and services, research ideas, product development, methods and results, innovations, designs, ideas, plans, trade secrets, proprietary information, distribution and sales methods and systems, sales and profit figures, customer and client lists, and relationships between TSI and its affiliates, distributors, customers, clients, suppliers and others who have business dealings with TSI and its affiliates ("Confidential Information"). Employee acknowledges that such Confidential Information is a valuable and unique asset and trade secret of TSI and covenants that he shall not, either during or after the Employment Term, disclose any such Confidential Information to any person for any reason whatsoever without the prior written authorization of the Board, which the Board may refuse in its absolute discretion, unless such information is clearly in the public domain through no fault of Employee or except as may be required by law with prior notice to TSI.

b)     Employee further recognizes and acknowledges that, in light of his particular duties and responsibilities to TSI, all inventions, discoveries and improvements, whether patentable or not, which have been or may in the future be made by him, during the active employment period or in the period following employment, which relate in any way to any business or activity of TSI, whether solely or jointly with others, whether during or outside normal working hours and whether on or off the premises of TSI, are and shall be and remain the exclusive property of TSI, whether or not disclosed, assigned or transferred at the time of the termination of the employment relationship established pursuant to this Agreement.

c)     Without request, Employee shall promptly and fully disclose to the CEO and appropriate member of the senior management of the company, and to no other person the inventions, discoveries and improvements referred to in Section 3(b) above and shall irrevocably, unconditionally and absolutely assign to TSI all of his rights throughout the world to such inventions, discoveries and improvements.

d)     Upon the request of TSI, either during the Employment Term or thereafter, Employee or his personal representatives, at the sole expense and subject to the exclusive control of TSI, shall apply or join with TSI in applying for a patent,

trademark, trade name or registered mark or design in all such countries of the world as TSI may at its discretion determine, and further shall execute all papers necessary therefore including assignments to TSI, or its nominee, without further consideration.

4.      **Non-Competition**

a)      For purposes of this Section, the following terms shall have the following definitions:

(i)      "Entity" shall mean any person, business, company, corporation, joint venture, partnership, proprietorship, trust or other entity.

(ii)      "Geographic Area" shall mean the entire world.

(iii)      "Prohibited Research or Business" shall mean Transdermal delivery of pharmaceuticals, TSI's U-Strip programmable Transdermal patch technology, The U-Wand skin care technology, The Delta Seed Technology and all other research and business in which TSI is engaged in any fashion during the Employment Term.

(iv)      "Restriction Period" shall mean the period of time beginning immediately following the end of the Employment Term and continuing for a period of three (3) years thereafter.

b)      During the Employment Term and the Restriction Period, Employee shall not, directly or indirectly, engaged in Prohibited Research or Business or own, manage, operate, join, control, finance, work for or participate in, or become or remain an officer, director, shareholder, employee, partner, principal, agent, representative, consultant or creditor of any Entity which either during the Employment Term or the Restriction Period is engaged in, or becomes engaged in, any Prohibited Research or Business in the Geographic Area.

c)      In the event that Employee shall violate the restrictions contained in Section 4(b) of this Agreement, the Restriction Period shall be extended by a period of time equal to the period of time during which such violation existed.

d)      The foregoing restriction shall not be construed to prohibit the ownership by Employee of not more than one percent (1%) of any class of securities of any corporation which is engaged in any Prohibited Research or Business having a class of securities registered pursuant to the Securities Exchange Act of 1934, provided that such ownership represents a passive investment and that neither Employee nor any group of persons including Employee in any way, either directly or indirectly, manages or exercises control of any such corporation, guarantees any of its financial obligations, otherwise takes any part in its business, other than exercising his rights as a shareholder, or seeks to do any of the foregoing.

## 5. No Solicitation

For a period of Five (5) years after termination of this Agreement, Employee shall not, either directly or indirectly:

a) Employ or solicit the employment of any Person who was employed by TSI or any of its affiliates on a full or part-time basis. at the time of, or within five (5) years prior to the termination of the employment relationship by TSI and Employee established hereto, or

b) Engage or solicit the engagement as an independent agent, consultant or otherwise, of any Person who was employed by TSI or any of its affiliates on a full or part time basis at the time of, or within five (5) years prior to the termination of the employment relationship by TSI and Employee established hereto, or

c) Solicit the business of any Person who was a customer of TSI at the time of, or within five (5) years prior to the termination of the employment relationship by TSI and Employee established hereto, with regards to any product which is a duplicate or substantially similar to a TSI Product.

## 6. Equitable Relief

a) Employee acknowledges that the restrictions contained in Sections 3, 4 and 5 hereof are reasonable and necessary to protect the legitimate interests of TSI and its affiliates, that TSI would not have entered into this Agreement in the absence of such restrictions, and that any violation of any provision of those Sections shall result in irreparable injury to TSI and its affiliates (each of which shall be deemed a third party beneficiary of such restrictions). Employee acknowledges that the business of TSI and Employee's connection therewith is and shall be national and international in scope, and that the geographic limitations of the confidentiality covenant, the noncompetition covenant and nonsolicitation covenant set forth above are therefore not inappropriate or unreasonable.

b) Employee acknowledges that PROVEN violation or threatened violation of Sections 3, 4 or 5 hereof would cause irreparable harm and injury to TSI for which monetary damages alone might not provide an adequate remedy and agrees that TSI and its affiliates shall be entitled to preliminary and permanent injunctive relief, without the necessity of proving actual damages, as well as to an equitable accounting of all earnings, profits and other benefits arising from any violation of Sections 3, 4 or 5 hereof, which rights shall be cumulative and in addition to any and all other rights or remedies to which TSI or any affiliate may be entitled.

c) In the event that any provision of Sections 3, 4 or 5 hereof should ever be adjudicated to exceed the time, geographic, service, or other limitations permitted by applicable law in any jurisdiction, then such provision shall be deemed reformed in such jurisdiction to the maximum time, geographic, service, or other limitations permitted by applicable law and enforced to such extent.

## 7. Copies

After termination of the effective employment period of this Agreement, and only during the term of three (3) years thereafter:

Employee shall provide a copy of sections 3, 4, 5, and 6 of this Agreement to an Entity which is engaged in a Prohibited research or Business, and TSI shall have the right to provide copy of Sections 3, 4, 5, and 6 of this Agreement to any Entity which TSI reasonably believes is or may become engaged in a Prohibited Research or Business:

a) Which Employee, directly or directly, owns manages, operates, joins, controls, finances or participates in or may, directly, own, manage, operate, join, control, finance or participates

in; or

b)      Which Employee is or may become an officer, director, shareholder, employee, partner, principal, agent, representative, consultant or otherwise; or

c)      In connection with which Employee is using or is permitting his name to be used or may use or permit his name to be used.

## 8.      Corporate Property

Upon termination of the employment relationship established pursuant to this Agreement for any reason, Employee shall immediately deliver to TSI all documentation and other property which belongs to TSI or which pertains to the business or financial affairs of TSI, including all notes and computer files pertaining thereto and TSI shall immediately make available to Employee all personal property of Employee.

## 9.      Termination

Notwithstanding anything to the contrary, the employment relationship established pursuant to this Agreement may or shall terminate, as the case may be, prior to the expiration of the Employment Term upon the occurrence of any one of the following events:

### 9.1      Disability

TSI may terminate the employment relationship established pursuant to this Agreement if Employee is unable to perform fully his duties and responsibilities hereunder by reason of illness, injury or incapacity for sixty (60) consecutive days, or for more than ninety (90) days in the aggregate during any period of twelve (12) consecutive calendar months, during which time he shall continue to be compensated as provided in Section 2 hereof. In such event, TSI shall have no further liability or obligation to Employee for compensation under this Agreement except as may be provided under any disability benefit plan which may be in effect for employees and in which he participated; provided, however, that Employee shall receive a pro rata portion of any incentive compensation to which he would otherwise have been entitled absent such illness, injury or incapacity, such proration to be computed as of the date of the termination of the employment relationship. In the event of any dispute under the Section 9.1, Employee agrees to submit to physical examinations, as may be required by the Board, by a licensed physician selected by the Board and reasonably acceptable to Employee.

### 9.2      Death/INCAPACITATED

The employment relationship established pursuant to this Agreement shall terminate if Employee dies or is adjudicated INCAPACITATED during the Employment Term. In such event, TSI shall pay to Employee's executors, legal representatives or administrators an amount equal to the installment of his Base Salary set forth in Section 2.4(a) hereof for the month in which he dies or is so adjudicated and a pro rata portion of any incentive compensation to which Employee would otherwise have been entitled absent death or adjudication of INCAPACITY, such proration to be computed as of the date of the termination of the employment relationship, and, thereafter, TSI shall have no further liability or obligation under this Agreement to his executors, legal representatives, administrators, heirs or assigns or any other person claiming under or through him.

### 9.3      Incentive Compensation Proration Computation

TSI's accountants shall compute the amount of the prorated INCENTIVE COMPENSATION referred to in Section 9.1 or Section 9.2 hereof, and such compensation shall be final and binding upon both TSI and Employee.

### 9.4    Cause

TSI may terminate the employment relationship established pursuant to this Agreement for "cause" (as described in Sections 9.4(a) or 9.4(b) below), in which event all payments and all other duties and obligations of TSI under this Agreement shall cease, except for Base Salary and incentive compensation to the extent already accrued:

a)    Immediately, without prior notice, in the event Employee engages in theft or dishonesty of any nature, is convicted of a crime punishable by imprisonment for a term of more than one (1) year or unlawfully discriminates against any other person, commits unauthorized disclosure of materially sensitive Confidential Information of TSI, or is involved unlawful substance abuse which is unlawful or which affects the performance of Employee's duties and obligations to TSI;

b)    In the event of Employee's gross and habitual failure to observe or perform material duties and responsibilities under this Agreement or refuses to observe or perform clear written reasonable goals or objectives of TSI or violates or contradicts any reasonable written directive, instruction or policy of TSI and fails to cure the same within fourteen (14) days of his receipt of notice with respect thereto.

### 9.5    Other Termination's

If TSI shall fail to fulfill any of the material terms and conditions of this Agreement and shall not cure such failure within fourteen (14) days of written notice from Employee setting forth such failure, Employee may terminate the employment relationship established pursuant to this Agreement effective immediately and shall not be bound by any of its restrictions or prohibitions; provided, however, that such failure by TSI is not the result of any act or omission of Employee.

Nothing contained in Section 9 shall limit in any way any rights of TSI to terminate the employment relationship between TSI and Employee as otherwise provided in and subject to this Agreement.

### 10.    Insurance.

Employee acknowledges that it is the intention of TSI to obtain life insurance on the lives of certain of its employee employees and, upon request from time to time by TSI, Employee shall submit to a physical examinations for the purpose of obtaining or maintaining life insurance on the life of Employee and shall otherwise cooperate fully with TSI including providing blood and other bodily samples and accurately completing health questionnaires, in obtaining or maintaining such policies of insurance.

### 11.    Survival

Notwithstanding the termination of the employment relationship established pursuant to this Agreement, Employee's obligations Sections 3, 4, 5, 6, 7 and 8 hereof shall survive and remain in full force and effect for the periods therein provided, or where no specific periods of time are therein provided, in perpetuity, and the provisions for equitable and other relief against Employee in Section 6 hereof shall continue in force.

12.    <u>Governing Law</u>

This Agreement shall be governed by and interpreted under the laws of the Commonwealth of Pennsylvania without giving effect to any conflict of law provisions. The sole situs of any litigation pertaining to this Agreement or the matters set forth herein shall be the United States District Court for the Eastern District Of Pennsylvania or the Court of Common Pleas of Delaware County, Delaware.

13.    <u>Notices</u>

All notices and other communications required or permitted hereunder or necessary or convenient in connection herewith shall be in writing and shall be deemed to have been given when hand delivered or mailed by registered or certified mail, postage prepaid, return receipt requested, as follows (provided that notice of change of address shall be deemed given only when received.

**If to TSI, to:**

> **TRANSDERMAL SPECIALTIES Inc.**
> **Bruce K. Redding Jr. / President**
> One Kathryn Lane
> Broomall, PA. 19008

**If to Employee, to:**

> **Theodore J. van de Kamp**
> Executive Vice President
> Sales & Marketing
> Tvandekamp@transdermalspecialties.com
> 100 Seaview Avenue, Suite 4B
> Norwalk, CT 06855
> www.transdermalspecialties.com
> Tel:      (203) 857-4887
> Cell:     (203) 984-1813
> Fax: (203)-866-1337
>
> E-Mail: tedvdk@gmail.com SS Number: 578 52 0501

or to such other names or addresses as TSI or Employee, as the case may be, shall designate from time to time by notice to the other party in the manner specified in the Section.

14    <u>Miscellaneous</u>

a)    This Agreement sets forth the entire understanding between the parties hereto with respect to the subject matter hereof and cannot be changed, modified, extended or terminated except upon written amendment approved by the Board and executed on TSI's behalf by the Chairman of the Board.

b)    All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, except that the duties and responsibilities of Employee hereunder are of a personal nature and shall not be assignable or delegable in whole or in part by Employee.

c)  If any provision of this Agreement or the application thereof to anyone or any circumstance is held invalid or unenforceable in any jurisdiction, the remainder of this Agreement, and the application of such provision to such person or entity or such circumstance in any other jurisdiction or to other persons, entities or circumstances in any jurisdiction, shall not be affected thereby, and to the end the provisions of this Agreement are severable.

d)  No remedy conferred upon the parties by this Agreement is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity. No delay or omission by TSI or Employee, as applicable, in exercising any right, remedy or power hereunder or existing at law or in equity shall be construed as a waiver thereof, and any such right, remedy or power may be exercised by TSI or Employee, as applicable, from time to time and as often as may be deemed expedient or necessary

e)  The word "including" shall be a word of enlargement rather than a word of limitation and shall be deemed to mean "including but not limited to" rather than "including only".

f)  All section headings are for convenience only. This Agreement may be executed in counterparts, each of which shall be an original. It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

g)  EMPLOYEE ACKNOWLEDGES THAT THIS AGREEMENT AFFECTS IMPORTANT LEGAL RIGHTS, THAT HE IS ENTITLED TO HAVE THIS AGREEMENT REVIEWED BY AN ATTORNEY OF HIS CHOOSING PRIOR TO EXECUTION AND THAT HE HAS DONE SO OR HAS WAIVED THE RIGHT TO DO SO, AND THAT HE IS EXECUTING THIS AGREEMENT AFTER HAVING CAREFULLY REVIEWED THE SAME.

h)  During the Employment Term, TSI shall conduct itself and shall use reasonable efforts to assure that all of its employees conduct themselves in accordance with (i) the highest ethical and professional standards, (ii) all policies and procedures which TSI shall from time to time adopt or promulgate, and (iii) applicable law.

**IN WITNESS WHEREOF,** the undersigned, **INTENDING TO BE LEGALLY BOUND,** have executed this Agreement as of the date first above written.

TRANSDERMAL SPECIALTIES, INC.

By:   Bruce K. Redding Jr.  /  President

_____(SEAL)
**EMPLOYEE**

## **LIST OF EXHIBITS**

| | |
|---|---|
| Exhibit "A" | Acts Requiring Approval of the CEO or Senior Management of the Company |
| Exhibit "A-1" | Initial Responsibilities of Employee |
| Exhibit "B" | Base Salary and compensation |

## EXHIBIT "A"

## ACTS REQUIRING APPROVAL OF THE CEO OR THE SENIOR MANAGEMENT OF THE COMPANY

- Entering into any contracts on behalf of TSI.

- Hiring and terminating personnel.

- Commencing any legal proceedings.

- Communicating any of TSI's financial information to any person or entity other than an TSI manager.

- All expense budgets.

- All business travel on behalf of TSI.

- Making any change to the adopted TSI operating plan.

- Making any decisions or committing TSI in any fashion outside of the normal course of its business as set forth in TSI's then current business plan.

- Doing anything, which would violate any of the contractual covenants or provisions by which TSI is bound.

- Purchasing of any equipment.


_____(SEAL)
**EMPLOYEE**

EXHIBIT "A-1"

INITIAL RESPONSIBILITIES OF EMPLOYEE

| TITLE: Executive Vice President<br>Sales & Marketing |
| --- |

**EMPLOYEE** shall have responsibility for implementation of the policies and directives relating to the job description, duties and assignments as outlined below:

- Sales of the Company's products
- Management of sales forces
- Advertisement and Promotion
- Management of sub-contractors.
- Development of Medical electronic systems
- Development of medical devices including transdermal patches
- Provide hands-on work related to biomedical testing of the company's products
- Provide Hands-on work related to human clinical tests of the company's products
- Provide Hands-on work related to human testing and other approved clinical tests of the company's products
- Other related duties, applicable to the wellbeing and growth of the company.

_____(SEAL)
**EMPLOYEE**

EMP- Employee

## EXHIBIT "B"

## BASE SALARY and COMPENSATION

**FY 2014:**     **The base salary shall be $ 95,000.00/ANNUM**
**FY 2015:**     **The base salary shall be $ 120,000.00/ANNUM**
**FY 2016:**     **The base salary shall be $ 175,000.00/ANNUM**

Thereafter continued Employment shall be based upon the performance of the Employee and the progress of the Company.

Mr. van de Kamp shall be entitled to $ 250,000.00 worth of Transdermal Specialties Stock for each year of employment.

## BENEFITS

a)     The company will extend the same medical HMO medical insurance plan adopted by company and shall pay 100% of the monthly costs for medical insurance for the term of this agreement.

b)     The employee shall be entitled to 8 paid holidays during the course of the year. The holidays recognized include those listed in the Employee Manual.

## VACATION SCHEDULE

The employee shall receive a paid Vacation schedule commensurate with the term of service to the company according to the following schedule:

Years 1-2:          10 Business days per annum
Years  3+           15 Business days per annum

Unused vacation days are not transferable or added to the next year's schedule.

_____(SEAL)
**EMPLOYEE**

-End-