# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEODORE J. VAN DE KAMP, et al. | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 16-cv-02768 |
| TRANSDERMAL | : | |
| SPECIALTIES, INC., et al. | : | |
| Defendants. | : | |

**Richard A. Lloret**                                     **December 17, 2018**
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

### Introduction

Plaintiffs Theodore and Patricia van de Kamp (collectively, the "Plaintiffs)[1] filed

the instant action alleging violations of the Fair Labor and Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq*., Pennsylvania's Minimum Wage Act ("PMWA"), 43 P.S. § 33.101 *et

seq*., and the Pennsylvania Wage Payment and Collection Law ("WPCL"), as well as for

breach of contract, unjust enrichment, and FLSA retaliation. Doc. No. 19 (First Am.

Compl.). Defendants Transdermal Specialties, Inc. ("TSI"), Bruce K. Redding, Jr., Bruce

K. Redding, Jr. Intellectual Property Trust ("IPT"), and Transdermal Specialties Global,

Inc. ("TSG"), (collectively, the "Defendants") responded with five counterclaims

sounding in tort against Plaintiff Theodore van de Kamp ("Mr. van de Kamp"): breach of

fiduciary duty, unjust enrichment, conversion, misappropriation of trade secrets, and

fraud. Doc. No. 44 (Defs. Answer to First Am. Compl.). This court has diversity

---

[1] After the complaint was filed, Richard M. Coan, by stipulation, was added as a plaintiff/real party in interest, as the Bankruptcy Trustee of the Estate of Theodore J. van de Kamp and Patricia van de Kamp. Doc. No. 33.

jurisdiction over the counterclaims, as TSI and Mr. van de Kamp are citizens of different states. *See* Doc. No. 14 (Counterclaims) at 16, ¶ 5.

"TSI is an early stage, start-up entity that develops technologically sophisticated prototype medical devices not yet proven to be commercially viable. As an early stage entity, TSI has little-to-no revenue and relies heavily on investment from shareholders and outside investors to fund its groundbreaking and highly complex research and development." *Id.* at ¶ 8. TSI has been developing transdermal patches and ultrasonic medication delivery systems, among other technologies. Transcript of Bruce Redding Deposition, April 2, 2018 ("Redding Dep.") at 14-16; *see* Counterclaims at ¶¶ 9-12. Mr. van de Kamp was part of the executive team at TSI. *Id.* at 35-36. TSI's products must be approved by the Federal Drug Administration (FDA) in order to be sold in the United States. *Id.* at 17-18. The earliest that the Defendants expect FDA approval on any of their products is 2020. *Id.* at 18. There has been no revenue on any of these products, nor is any expected for at least the next two years. *Id.* at 17-18, 29. There is some "possibility" of product sales in Asia, where FDA approval is not required. *Id.* at 19.

**Discussion**

Plaintiffs[2] have filed a "Motion in Limine to Exclude Lay Opinion Witness Testimony." Doc. No. 87. The motion seeks to preclude testimony by Defendant Bruce Redding "relating to causation and damages in support of their crossclaims [sic] against Plaintiffs." *Id.* at 1. Plaintiffs' memorandum in support explains that the counterclaims allege that Mr. van de Kamp diverted and pocketed revenues from Transdermal Specialties, Inc. ("TSI"), which (the Defendants allege) cost TSI lost profits of

---

[2] Mr. van de Kamp is the only party named as a defendant on the counterclaims. "Plaintiffs" is a much simpler term to use and to digest than "defendant on the counterclaim," and using the simpler term causes no confusion.

$2,000,000.00. Doc. No. 87-1 ("Pl. Mem.") at 1. Plaintiffs argue that evidence of this loss will "of necessity . . . be opinion testimony," and that the opinion testimony 1) was not disclosed, as required by a Scheduling Order, nor was the failure to disclose remedied by Mr. Redding's deposition, which was never completed, Plaintiffs say, because of his lack of availability, and 2) is not reliable, because Bruce Redding is unqualified by training and experience to supply such opinion evidence. *Id.* The Plaintiffs rely on *Amco Ukrservice v. American Meter Company,* 312 F.Supp.2d. 681 (E.D. Pa. 2004) and several other cases for the proposition that testimony about lost profits should be excluded, as a general rule, in the case of a new business, since such testimony is inherently speculative. Pl. Mem. at 4. Plaintiffs conclude that lay opinion testimony by Bruce Redding as to damages should be excluded. *Id.*

Defendants argue that Mr. Redding's testimony is relevant, under Fed. R. Evid. (FRE) 401, and that its probative value is not substantially outweighed by the danger of unfair prejudice, under FRE 403. Doc. No. 91 ("Def. Mem.") at 3. Defendants contend that exclusion of the evidence is unwarranted because the defendants did not violate a Scheduling Order. *Id.* Defendants also contend that the case law permits an exception to the "new business rule," because the Defendants can show a "significant interest" in their product or service. *Id.* (citing to *Delahantey v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1260 (Pa. Super. 1983)).

## A. Non-disclosure under the Scheduling Order.

Plaintiffs mentions the Scheduling Order of November 17, 2017. Doc. No. 53. Another Scheduling Order was filed March 27, 2018. Doc. No. 62. The Order of March 27, 2018 provided that

> 3. Any party expecting to offer opinion testimony from lay witnesses pursuant to Federal Rule of Evidence 701 with respect to the issues of liability and damages shall, at the time required for submission of information and/or reports for expert witnesses, serve opposing parties with details and/or documents covering the lay opinions of the Rule 701 witnesses.

*Id.* at 1. The purpose of this language, in both Orders, was to require that a party who intended to introduce lay opinion at trial provide reasonable advance disclosure of the details of the opinion evidence, similar to the advance disclosure of expert testimony required under FRE 702. That is why the deadlines were the same. *Compare* Doc. 62, ¶ 3 *with* ¶ 2 (both require disclosure by April 16, 2018). Providing only documents, with no narrative disclosure of the content of the lay opinion, does not reasonably comply with the Scheduling Order. The documents may disclose facts supporting an opinion, but what they do not do is supply Mr. Redding's opinion. The non-disclosure of his opinion is exacerbated, not improved, when Defendants argue that they "have provided substantial documentation (over 1,700 pages worth as outlined in Defendants' Pretrial Memorandum) during the course of discovery related to the topics provided by any lay opinion[.]" Def. Mem. at 2. The volume of documents makes the range of possible opinion more diffuse, and harder to anticipate.

Exclusion is a drastic remedy, especially where the moving party has not explained why other, less extreme remedies for the non-disclosure, such as a motion to compel Mr. Redding's deposition, or directing Mr. Redding to prepare and submit an affidavit outlining his expected testimony, would not suffice. Ordinarily I would direct that additional pre-trial discovery take place. However, Plaintiffs' other arguments, if correct, would mean that evidence of future lost profits is inadmissible, even if discovery deficiencies may be cured. I will address those arguments.

## B. The anticipated lay opinion testimony does not qualify for admission under FRE 701.

Federal Rule of Evidence 701 permits a non-expert witness to offer her opinion to the jury if, and only if, her testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."[77] Such testimony is known as lay opinion testimony, and the proponent of the testimony bears the burden of providing an adequate foundation for that testimony.[78] If the testimony fails to meet any one of the three foundational requirements, it should not be admitted.

*United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016).

Mr. Redding has sufficient practical knowledge of his own business to satisfy FRE 701(a), if he were offering opinion testimony about how his business has functioned in the past. The problem is that his testimony, to be helpful to a jury, must include much more: the extrapolation of future profitability based on *absolutely no sales history*. Such an opinion, if admissible at all, would have to be qualified by a high level of expertise in performing such extrapolations under circumstances that supply a substantial guarantee of reliability.[3] Such an opinion would have to convince me, as the gatekeeper, that it was "rationally based on the witness' perception[,]" FRE 701(a), and not based on scientific or technical expertise properly cabined within FRE 702. *See* FRE 104(a) (the court must decide any preliminary questions about whether evidence is admissible); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10 (1993) (preliminary questions about the admissibility of evidence are decided by the court under a preponderance of the evidence standard (citing to *Bourjaily v. United States*, 483 U.S.

---

[3] For instance, if Mr. Redding routinely performed such extrapolations for (non-litigation) customers who paid him for his services, the market for his extrapolations would provide some circumstantial comfort as to the reliability of his methods. Alternatively, educational attainment in a scientific or technical specialty that clearly relates to the performance of his extrapolations might supply a circumstantial guarantee of reliability. Finally, a step-by-step demonstration of the logical progression from accepted first principles to a conclusion based on such principles might suffice. None of these is proffered. All of these methods of accrediting Mr. Redding would tend to identify him as an expert witness, not a lay witness.

171, 175–176 (1987))). But in what sense projections of future profitability could be rationally based on Mr. Redding's perception of his existing business, without employing sophisticated scientific, technical or other specialized knowledge, has not been made clear. I don't see how it can be done.

The Defendants have not borne their burden of establishing the foundational requirements under FRE 701. *Fulton*, 837 F.3d at 291. Lay opinion evidence of lost future profits will be excluded.

### C. Evidence of Defendants' future lost profits is so speculative that it must be excluded, under Pennsylvania law.[4]

Plaintiffs argue that lay opinion testimony about lost profits should be excluded under Pennsylvania's "new business rule," which (they contend) bars proof of lost future profits for a brand-new company, on the ground that there is no basis in historical earnings and to warrant such projections. Pl. Mem. at 4. Defendants argue that Pennsylvania's rule is not an absolute bar, and that an exception exists in instances – such as this – where there was a "significant interest" in the business's product or services. Def. Mem. at 3.

Pennsylvania law imposes a heavy burden on a new business, with no track record of income, that seeks to prove lost future profits. *Delahanty v. First*

_____

4 I agree with the parties, who have argued that Pennsylvania substantive law governs these tort damage issues. *See Felder v. Casey*, 487 U.S. 131, 151 (1988) (state law applies to causes of action over which diversity or ancillary jurisdiction extends); *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989) (state law governs the propriety of damages awarded and the factors a jury may consider when assessing damages). Pennsylvania choice-of-law rules, applicable because this court is located in Pennsylvania, dictate that Pennsylvania law governs these tort counterclaims, because they concern a business situated in Pennsylvania and business activities centered in Pennsylvania. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (state choice-of-law rules apply); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988) (same); *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964) (elaborating Pennsylvania's choice-of-law rules).

*Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1259–61 (Pa. Super. 1983). A factor in the decision whether to admit evidence of lost profits for a new business is the nature and extent of "significant interest" in the business's product. *See General Dynafab, Inc. v. Chelsea Industries, Inc.,* 447 A.2d 958, 960 (Pa.Super. 1982). Even if there has been "significant interest," the interest must be translated, by some reasonable means, into a dollar figure representing a range of expected net profit. *See Power Restoration Intern., Inc. v. PepsiCo, Inc.*, 2015 WL 1208128, at *7 (E.D.Pa. 2015).

Where a business owner did not explain a rational basis for accepting his assumptions (10% yearly increase in profits and 560 cars leased in the first year of operations), the fact that there was "significant interest" in his business did not make his opinion testimony about future profits admissible. *Delahanty,* 464 A.2d at 1260-61. Where the bases for projected profit margins are unexplained, it is "as easy to conclude the estimates were 'pie in the sky' as to conclude that they bore any relation to reality." *Power Restoration*, 2015 WL 1208128, at *7. "[C]onclusory assertions simply do not constitute the 'substantial evidence' required to prove lost profit damages for a new business, *see Delahanty,* 464 A.2d at 1260–61." *Id.* Where the record "has no explanation of the bases for the projections offered by" the business owner's lay opinion, the testimony is insufficient. *Id.*

The problem with Mr. Redding's anticipated lay opinion evidence of loss profits is that it has not even been articulated, notwithstanding a Scheduling Order requiring that it be done and a motion to preclude the evidence that made it clear it was "put up or shut up" time. *Id.* at 9. While *Power Restoration* was decided on summary judgment, a party who intends to introduce lay opinion evidence has the burden of demonstrating that the evidence meets the foundational requirements of FRE 701. That is particularly

true here, where TSI is a start-up business with no earnings history at all, and without FDA approval of its new medical products. *See Von der Ruhr v. Immtech Intern., Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) ("In the realm of lost profits, lay opinion testimony is allowed in limited circumstances where the witness bases his opinion on particularized knowledge he possesses due to his position within the company."). As the court explained in *Von der Ruhr*,

> [the business owner's] proposed testimony does not fit these parameters. Rather, he intended to testify to his expectation of millions of dollars in profits from a brand new drug, which had not been approved by the FDA, which still needed a corporate partner, and for which no competitive market analysis had been conducted. It is difficult to imagine how anyone in this situation could possess the necessary personal knowledge to give a useful lay opinion based on his perception and it is clear that [the business owner] did not have such knowledge.

*Id*. at 863. Defendants have not proffered the "'substantial evidence' required to prove lost profit damages for a new business, *see Delahanty,* 464 A.2d at 1260–61." *Power Restoration,* 2015 WL 1208128, at *7.

The deficit in earnings history here is more glaring than in *Delahanty*, where the business had only been "in operation for seven months when the loans were called and the cars in the inventory of both Cascade and Auto Sales were surrendered." 464 A.2d at 1260. Here, there was no product for sale at any point, never mind gross receipts or profit, nor is there any certainty that there ever will be. The problem is not that there are conceded lost future profits, which are nevertheless difficult to quantify with precision. The problem is that there is no certainty there will be any approved product, or profit, at all. *See Grimes v. Northwest Airlines, Inc.*, 1999 WL 527831, at *1 (E.D.Pa. 1999) ("damages are not speculative merely because the amount cannot be determined with certainty. Rather, damages are speculative only if the uncertainty surrounding them relates to whether they actually exist."). *Id.*

**Conclusion**

Lay opinion testimony by Bruce Redding concerning lost profits caused by Mr. van de Kamp will be excluded at trial because the projection of lost profits is not rationally related to the witness's knowledge of his own business operations. *See* FRE 701(a). Instead, any admissible evidence of profit projections would have to be "based on scientific, technical, or other specialized knowledge within the scope of FRE 702[,]" and therefore would not admissible under FRE 701. Because of these deficiencies, the evidence would not be "helpful" to a jury. *See* FRE 702(b). For the same reasons, the evidence is too speculative under Pennsylvania's "new business" rule. Not only Mr. Redding's opinion, but any exhibits to be introduced to support his opinion of lost profits, are excluded.

If Mr. Redding intends to offer lay opinion evidence about any subject other than lost profits, he must provide an affidavit to opposing counsel spelling out in detail these opinions, the evidence upon which he bases the opinions, and his reasoning. Anything not included in the affidavit will be excluded at trial. The production of an affidavit does not preclude the taking of Mr. Redding's deposition before trial, pursuant to terms I will outline upon application of the plaintiffs for permission to depose Mr. Redding.

An Order will be entered implementing the decisions explained in this Memorandum.

**BY THE COURT:**

   *s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge